IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>JOSE FLORES-ORTEGA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING GOVERNMENT'S MOTION TO RECONSIDER<br><br><br><br><br><br>Case No. 2:05-CR-672 TS |

Reconsideration of an order on a suppression motion is in the discretion of the Court.  In support of its Motion to Reconsider the government proffers evidence that was not presented at either the evidentiary hearings before the Magistrate Judge or in the hearing before this Court.  Because the proffered new evidence would not change the Court's ruling, reconsideration is denied.

The suppression issue in this case has a protracted history.  On October 21, 2005, Defendant filed his Motion to Suppress evidence found during a traffic stop on I-15 near St. George, Utah.  The Motion was referred to a Magistrate Judge for further proceedings and for the issuance of a Report and Recommendation.

1

The Magistrate Judge held two evidentiary hearings.  Defendant testified at the first hearing and the Utah Highway Patrol Trooper (the Trooper) who made the stop testified at both hearings.   Their testimony differed on several key facts, including the circumstances of the traffic stop.

After briefing, the Magistrate Judge heard argument on the Motion on March 20, 2006.  On April 11, 2006, the Magistrate Judge issued a Report and Recommendation.[1] The Magistrate Judge's 34-page Report and Recommendation thoroughly analyzed the facts and the case law.  The Magistrate Judge noted that he was not faulting the Trooper for being unable to remember all the details of every traffic stop and noted that "some or even many aspects" of his testimony may be accurate.[2]   However, based on several factors, the Magistrate Judge found that the Trooper's testimony in this case was not credible and, therefore, there was no evidence justifying the traffic stop.  Accordingly, he recommended that the Motion to Suppress be granted.

The government filed an Objection to the Report and Recommendation, but did not seek reconsideration by the Magistrate Judge.  The government did not object to the Magistrate Judge's legal analysis or to his general factual findings.   Instead, the government argued that the Magistrate Judge's credibility determination for the Trooper was erroneous.[3]  The Objection set forth, in detail, the government's differing interpretation

---

[1]Docket No. 41.

[2]Tr. at 30.

[3]Docket No. 47, at 3, 14.

for each factor relied upon by the Magistrate Judge in making the credibility determination.[4] By its Objection, the government sought a new hearing for the purpose of having this Court observe the Trooper's "demeanor and review first-hand the evidence relied upon by the Magistrate Judge."[5]  The government did not argue that there was any additional evidence to be presented at such a de novo hearing.

The Court heard the parties' arguments on the Objection on March 20, 2006.  The Court conducted a de novo review of the entire record, including reading the transcript of the evidentiary hearings.  The Court determined that a new hearing was not warranted. Reviewing the existing record, the Court found a pattern of inconsistency and poor memory in the Trooper's testimony.  As examples, the Court cited the Trooper's failure to videotape this traffic stop in disregard of the Utah Highway Patrol's mandatory videotape policy, his attempt to minimize his failure to do so in other cases, the manner in which he changed his testimony regarding Defendant's driver's license, and an attempt to minimize the nature of a prior conference with the U.S. Attorney's Office.[6]  Based on the manner of the Trooper's testimony about these factors as well as other inconsistencies, the Court determined that the Trooper's testimony in this case was not credible.  The Court found that the government had failed to meet its burden to show that the stop was justified at its

---

[4]*Id*. at 5-14.

[5]*Id.* at 3-4.

[6]*Id.* at 3-4.

3

inception.  Accordingly, on July 21, 2006,  the Court issued its Order Granting the Motion to Suppress (the Order).[7]

The government filed the present Motion to Reconsider the Order on August 21, 2006.   The parties' submissions on the issue of reconsideration were completed on October 10, 2006.

The government seeks reconsideration and a new evidentiary hearing for the purpose of presenting new evidence in opposition to Defendant's Motion to Suppress.  The government candidly acknowledges that the new evidence should have been presented at one of the earlier hearings before the Magistrate Judge or this Court.[8]   Thus, the government does not attempt to argue that the evidence is "new evidence" in the sense that it was previously unavailable.  Instead, the government contends that the interest of justice requires that the Motion to Suppress be reopened and reheard with the proffered new evidence.  The government contends that it would be in the interest of justice and fairness for the Court to vacate its prior Order and conduct a de novo hearing because if it does not, the ruling may foreclose prosecution in this case and affect the value of the Trooper's testimony in future cases.

Defendant opposes reconsideration on the grounds that (1) the evidence was not previously unavailable and, therefore, does not constitute new evidence warranting reconsideration, and (2) the new evidence is not relevant.   Defendant argues that if

---

[7]Docket No. 52, Memorandum Decision and Order on Report and Recommendation and Granting Defendant's Motion to Suppress.

[8]Docket No. 62, at 2.

reconsideration is granted, the Court should again refer the matter to the Magistrate Judge for further proceedings.  Defendant contends that in order to reopen the suppression motion, the government must show that the new evidence meets the standard for new evidence sufficient to justify a new trial under Fed. R. Crim. P. 33.[9]

Reconsideration of an order on a motion to suppress, or the reopening of the record in a suppression hearing, is in the discretion of the trial court.[10]  In the exercise of its discretion, a court may reconsider a ruling on a motion to suppress with[11] or without [12] a new evidentiary hearing.  There is a split of authority on whether, "when it moves reconsideration on the grounds that it can introduce new evidence to show that no Fourth Amendment violation occurred," the government must "proffer a justification for its failure

---

[9]*See* Fed. R. Crim. P. 33; *United States v. Gwathney* __ F.3d __, 2006 WL 2734108, *7 (10th Cir. 2006) ("defendant must show:(1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal") (quoting *United States v. Sinclair,* 109 F.3d 1527, 1531 (10th Cir.1997)).

[10]*United States v. Castillo-Garcia*, 117 F.3d 1179, 1197 (10th Cir. 1997) (*overruled on other grounds by United States v. Ramirez-Garcia*, 291 F.3d 1219 (10th Cir. 2002)).

[11]*E.g. United States v. Cobb*, 1999 WL 311661 (10th Cir. 1999) (unpublished Order and Judgment affirming trial court's denial of suppression motion after reconsideration and a new evidentiary hearing).

[12]*E.g. United States v. Lloyd*, 46 Fed. Appx. 912 (10th Cir. 2002) (unpublished Order and Judgment affirming trial court's denial of motion to suppress where trial court had granted government's second motion to reconsider based on further review of the existing record).

to present the relevant evidence at the original suppression hearing."[13]   The Eleventh and

D.C. Circuits require such a justification,[14] the Ninth, Fifth, and Seventh Circuits do not.[15]

In the *Bayless* case, the Second Circuit declined to decide which standard applied to

reconsideration based on new evidence because it found that the government had

adequately justified its failure to present the evidence at the prior hearing.[16]

The Tenth Circuit has not clearly stated which standard applies to reconsideration

of suppression motions.   In *United States v. Castillo-Garcia*, it appeared to apply the

standard for reconsideration suggested by Defendant:

> the district court found that "the Government raise[d] *no new law or facts"* in
> its motion to reconsider, i.e. no arguments based either on newly discovered
> evidence or on legal authority promulgated subsequent to the hearing on the
> suppression motion.   Indeed, the government apparently *conceded* that it
> had never raised the good faith exception argument until after the
> defendants' motion to suppress had been granted.   As the district court
> noted, arguments raised for the first time in a motion for reconsideration are
> not properly before the court and generally need not be addressed.   Thus,
> the district court did not abuse its discretion when it denied the government's
> motion to reconsider.[17]

---

[13]*United States v. Bayless*, 201 F.3d 116, 131 (2nd Cir. 2000) (collecting cases).

[14]*Id.* (citing *United States v. Villabona-Garnica,* 63 F.3d 1051, 1055 (11th Cir. 1995) and *McRae v. United States,* 420 F.2d 1283, 1286-88 (D.C. Cir. 1969)).

[15]*Id.*( citing *United States v. Rabb*, 752 F.2d 1320, 1323 (9th Cir.1984); *United States v. Regilio,* 669 F.2d 1169, 1177 (7th Cir. 1981); and *United States v. Scott,* 524 F.2d 465, 467 (5th Cir.1975)).

[16]*Id.*

[17]117 F.3d at 1197 (quoting trial court opinion, other citations and quotations omitted, emphasis in original).

In *United States v. Wiseman*,[18] the Tenth Circuit noted that although the trial court in that case was under no obligation to reopen or reconsider where it had already held a suppression hearing, there may a "rare case in which extraordinary circumstances" raise "such grave doubt about the fairness of the proceedings" that failure to reconsider or to reopen the suppression hearing would be an abuse of discretion.[19]

This Court need not determine if the government must justify its failure to present the new evidence at a prior hearing in order to obtain reconsideration and a new hearing because the Court has reviewed the proffered new evidence and finds that it would not change or affect the Court's ruling in any event.

The proffered new evidence consists of (1) a transcript of a ruling in another case in this district and (2) the Declarations of nine individuals: two Utah Highway Patrol (UHP) sergeants, two prosecuting attorneys for various cities in the Salt Lake Valley, one defense attorney, two troopers, a DEA agent and a UHP technician.  Of these declarants, one of the troopers[20] and the defense attorney[21] previously testified at the evidentiary hearings.

The government contends that the new evidence is necessary to show such things as that the Trooper was not responsible for the failure to produce a videotape in a prior

---

[18]172 F.3d 1196 (10th Cir. 1999).

[19]*Id*. at 1208.

[20]Docket No. 57-6.

[21]Docket No. 57-9.

criminal case, that he had valid explanations for failing to videotape the stop in this case, and that he did not flagrantly disregard the mandatory videotape policy in this case.[22]

For the reasons that follow, the Court finds that the proffered new evidence would not affect or change its decision and is also largely cumulative or irrelevant.[23]

The Declarations of two UHP sergeants (the Trooper's current and past supervisors) and of one of the other troopers testify extensively about problems and malfunctions with the UHP's videotape equipment and vehicles in general and the Trooper's videotape equipment and vehicle in particular. None of this evidence is relevant to anything in this case. There has never been any assertion, at the evidentiary hearing or currently, that there was a vehicle or videotape equipment malfunction affecting the traffic stop at issue in this case.

The Declaration of one of the other troopers,[24] testifies that during the weekend in question, the Trooper had asked him several times for a videotape, that he did not have one to give him, that the Trooper did not have access to the local UHP office and that "due to job responsibilities" the other trooper never got to the local office to get him a videotape.[25]

---

[22]Docket No. 62, at 3.

[23]The Court also notes that not all of the proffered new evidence supports credibility.

[24]This other trooper was present and testified at the first evidentiary hearing.

[25]Docket No. 57-6, ¶¶ 3 through 5.

However, such testimony is merely cumulative of the Trooper's own testimony at the hearing. The Trooper testified that he knew that he was going to St. George and intended to work the three-day Labor Day interdiction.[26]  Despite knowing the mandatory videotape policy, he went to St. George on Thursday night or Friday morning knowing he had already run out of videotape before he left.[27]  After he was already working on the interdiction, he asked another trooper for a videotape, the other trooper didn't have one, they did not make it back to the other trooper's office to obtain a videotape, and the Trooper did not report the lack of a videotape to his supervisor.[28]  The traffic stop at issue occurred on the Saturday night of that weekend, the second shift the Trooper would have worked without any videotape.  Contrary to the government's argument, nothing in its proffered new evidence would affect the Court's finding.

The UHP technician's Declaration explains that requests by defense counsel for videotapes are not made directly to the troopers.  Instead, requests are routed through the

---

[26]Tr. at 51-52 and 54.

[27]Q.   . . . . and you're saying you just forgot videotapes that day or that weekend?
   A.   Yeah, I ran out - - my video ran out and I didn't have any when I went down to St. George.
   Tr. at 54.

[28]*Id.* at 53-55.  *See also* Tr. at 243-44:

   Q.   On this date you were away from your home base and you had actually requested videotape from another trooper?
   A.   Yes, I had.  I requested [the other trooper] to give me a tape because I don't have a way to get into his office.  And we were never able to get over to his office and get one.

technician who, in turn, requests them from the troopers, makes copies, and forwards the copies to the person who filed the request.[29]

The government contends this evidence is needed to show, among other things, that the Trooper was not the individual responsible for producing a copy of the videotape during discovery in a criminal case.  However, such fact was already brought out at the evidentiary hearing.[30]

Having reviewed the proffered new evidence regarding the factor of the Trooper's testimony attempting to minimize his previous instances of cases where there was no videotape, it would not affect the Court's ruling. The new Declarations of two prosecutors who have previously worked with the Trooper recount their own problems with videotapes and the Declarations of other witnesses address their respective difficulties and problems with obtaining videotapes of traffic stops.  A UHP sergeant's Declaration testifies that the UHP's mandatory video tape policy for all police-related activities is "difficult for any trooper to follow at all times particularly those troopers who aggressively pursue police-related activities."[31]

This proffer misses the point.  It was not the reasons the Trooper failed to videotape stops in his past cases that were important; it was the Trooper's manner of testifying by

---

[29]Docket No. 57-10.

[30]A.   . . . I'm sure there [are] other individuals who are responsible for getting [the tape] to use.
Q.   The trooper doesn't deliver it to your officer personally?
    A.    No.  I have never had a trooper deliver it, no.
Tr. at 228.

[31]Docket No. 57-2 at ¶4.

minimizing his past problems.  Thus, the only thing that was relevant about the evidence of a lack of a videotape in a case with a non-testifying attorney from the public defender's office[32] was that it was one of a number of prior cases involving the Trooper where there was no videotape.[33]

Another witness, a defense attorney, testified that he was unable to obtain the correct videotape of the Trooper's videotape of his client's stop and the client's case was dismissed.[34]  This witness' Declaration now testifies that sometime after his testimony in this case, the correct videotape was provided.[35]   However, this does not affect the most significant rebuttal testimony on the extent of the Trooper's prior cases with no videotapes, which was given by the second defense attorney to testify at the evidentiary hearings.  He testified that after he had already experienced two or three previous cases involving the Trooper and a lack of a videotape, he then unsuccessfully moved for dismissal of the next case he had with the Trooper where there was not a videotape of the stop.[36]   This testimony is unaffected by the proffered Declarations.

---

[32]There was no evidence at the evidentiary hearing that the Trooper's case with the non-testifying defense attorney was dismissed, only that there was no videotape.

[33]*Id.* ("there's been one case with her that there was no video").

[34]This is the same attorney/witness whose Declaration the government offers for the fact that after his testimony in this case, the correct video was provided.

[35]Docket No. 57-9.

[36]Tr. at 230-31 ("The Judge denied my motion saying she did not find bad faith on behalf of the officer.")

The DEA agent's Declaration concerns the circumstances of the Trooper giving him the Defendant's identification card and Mexican driver's license. Such evidence does not change the Court's ruling because it was the fact that, during the course of the evidentiary hearings, the Trooper changed his testimony about the driver's license *after* hearing contradictory evidence on the subject that the Court weighed against his credibility.

Many of the declarants testify as to their professional associations with the Trooper and the declarants' knowledge of his professionalism, character, work ethic, productivity, previous success in assisting with evidence, or previous success as a witness in other criminal cases. Similarly, the transcript of a ruling in a suppression hearing in an entirely different criminal case contains the finding by the judge in that case that the Trooper's testimony in that case was found to be credible.[37]

These efforts to bolster the Trooper's credibility would not change the Court's ruling in this case because the Court's ruling was based upon the factors set forth in the Order, which are not changed by the proffered new evidence. That the Trooper was previously or subsequently a credible witness in other cases does not affect the Court's determination that his testimony as a fact witness *in this case* was not credible. As part of its de novo review, the Court already fully considered the government's arguments as possible alternative interpretations of the factors at issue in the testimony and found them unpersuasive. Because the new evidence proffered in support of the Motion to Reconsider would not affect or change the Court's ruling, it is therefore

---

[37]Docket No. 65.

ORDERED that the government's Motion to Reconsider (Docket No. 56) is DENIED. It is further

ORDERED that pursuant to the Court's standard policy that cases be set for trial as soon as a suppression issue is resolved, trial will be scheduled by separate order. The Court has already excluded the time from the filing of the Motion to the date of this Order from the speedy trial calculation.  Any further exclusion of time and/or continuance shall be by motion of a party.

DATED  October 24, 2006.

BY THE COURT:

_____

TED STEWART
United States District Judge